**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| Donald C. Abston,<br>408 Hadley Ave.,<br>Dayton, OH 45419<br><br>      Plaintiff,<br><br>v.<br><br>New Penn Financial LLC, d/b/a Shellpoint Mortgage Servicing,<br>4000 Chemical Rd., Suite 200<br>Plymouth Meeting, PA 19462,<br><br>and<br><br>Nationstar Mortgage, LLC<br>d/b/a Mr. Cooper<br>c/o Corporation Service Company,<br>50 West Broad Street, Suite 1330,<br>Columbus, OH 43215<br><br>and<br><br>Federal Home Loan Mortgage Corporation d/b/a Freddie Mac<br>8200 Jones Branch Drive<br>McLean, VA 22102<br><br>      Defendants. | Civil Action No.: 3:19-cv-195<br><br>Judge:<br><br>Magistrate:<br><br>**<u>JURY DEMAND ENDORSED HEREIN</u>** |

**PLAINTIFF DONALD C. ABSTON'S COMPLAINT FOR MONEY DAMAGES AND OTHER RELIEF**

The following allegations are based upon Plaintiff Donald Abston's, ("Mr. Abston")'s personal knowledge, the investigation of counsel, and information and belief.

Mr. Abston, through counsel, alleges as follows:

1

**I. INTRODUCTION**

Mr. Abston thought the problems surrounding his home mortgage were behind him. He did what was asked of him. Mr. Abston made temporary payments to his mortgage servicer Nationstar Mortgage, LLC d/b/a Mr. Cooper ("Nationstar"). He got into a permanent modification of his mortgage with the owner of the loan, Federal Home Loan Mortgage Corporation d/b/a Freddie Mac ("Freddie Mac"). Mr. Abston made payment on the permanent modification. However, despite Mr. Abston's compliance with the terms of the modification, Nationstar and Freddie Mac refused to recognize the parties' agreement – due to Nationstar's failure to send the correct documents and notices. Even worse, Nationstar continued forward with a foreclosure lawsuit in violation of federal law, ultimately obtaining a foreclosure judgment. It then transferred servicing rights to New Penn Financial LLC, d/b/a Shellpoint Mortgage Servicing ("Shellpoint") which, to this day, continues to attempt to collect amounts that it is not entitled to under the loan. Mr. Abston is potentially within months of losing his home and is therefore on the verge of having the severe damages he has already suffered as a result of all named Defendants' actions compounded. He had no choice but to bring this lawsuit.

**II. PRELIMINARY STATEMENT**

1. Mr. Abston institutes this action against Nationstar for actual damages, statutory damages, non-economic damages, attorney fees, and the costs of this action against Nationstar for violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.* and Regulation X, 12 C.F.R. §§ 1024.41 *et seq.*

2. Mr. Abston institutes this action for actual damages, statutory damages, non-economic damages, attorney fees, and costs of this action against Shellpoint for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*.

3. Mr. Abston institutes this action for breach of contract under Ohio law against Freddie Mac.

4. Mr. Abston institutes this action against Nationstar for actual damages, statutory damages, non-economic damages, attorney fees, and the costs of this action against Nationstar for violations of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, *et seq.* and Regulation B, 12 C.F.R. § 202 *et seq;* 12 C.F.R. § 1002 *et seq.*

### III. JURISDICTION

5. This Court has subject matter jurisdiction over Count One under RESPA, Count Two under the FDCPA, Count Four under the ECOA, 12 U.S.C. § 2614, and 28 U.S.C. §§ 1331 and 1337 and Count Three under 12 U.S.C., § 1331.

6. The Court has personal jurisdiction over Defendants, Shellpoint and Nationstar, because Shellpoint and Nationstar transact business within this District, the loan at issue was incurred within this District, and the property which was the subject of the loan at issue is located within this District (hereinafter "Property"). *International Shoe v. Washington*, 326 U.S. 310 (1945).

7. Venue is proper in accordance with 28 U.S.C. § 1391(b)(2), because a substantial activity by Defendants occurred in this judicial district, and the Property is located in this judicial district.

## IV. PARTIES

8. Mr. Abston is a natural person currently residing within this Court's jurisdiction at 408 Hadley Ave, Dayton, Ohio 45419.

9. At all relevant times, Mr. Abston was and is a **"Person"** within the meaning of RESPA at 12 U.S.C. § 2602(5).

10. At all relevant times, Mr. Abston was and is a **"Borrower"** within the meaning of RESPA.

11. Nationstar is a company organized under the laws of the United States of America with its principal place of business in Dallas, Texas.

12. Shellpoint is a company organized under the laws of the United States of America with its principal place of business in Pennsylvania.

13. At all relevant times, Nationstar was and is a **"Person"** within the meaning of RESPA, 12 U.S.C. § 2602(5).

14. At all relevant times, Nationstar was and is a loan **"Servicer"** of Mr. Abston's **"Federally Related Mortgage Loan"** within the meaning of those terms in RESPA respectfully at 12 U.S.C. §§ 2605(i)(2) and 2602(1).

15. At all relevant times, Mr. Abston was and is a **"Consumer"** within the meaning of the FDCPA at 15 U.S.C. § 1692a(3).

16. At all times relevant, Mr. Abston's Note and mortgage on his personal residence (hereinafter "Mortgage Loan") is and was a **"Debt"** under the FDCPA, 15 U.S.C. § 1692a(5).

17. At all times relevant, Shellpoint was and is a "**Debt Collector**" under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a(6) because it

acquired servicing rights after the debt account was allegedly in default or treated it as if it was in default when it acquired servicing rights.

18. Freddie Mac is a Government Sponsored Enterprise with its principal place of business in Virginia.

19. At all relevant times, Freddie Mac was the owner of the Mortgage Loan.

20. At all relevant times, Mr. Abston was an "**Applicant"** within the meaning of the ECOA at 15 U.S.C. § 1691a(e).

21. At all relevant times, Nationstar was a **"Creditor"** within the meaning of the ECOA at 15 U.S.C. § 1691a(e).

## V. FACTUAL ALLEGATIONS

22. Mr. Abston incorporates all paragraphs in this Complaint by reference as though fully written here.

23. Each action and inaction alleged herein against all named Defendants is also an allegation of action and inaction by all named Defendants' agents, predecessors, successors, employees, contractors, assignees, assignors, and servicers, as appropriate.

24. On or around February 15, 2013, Mr. Abston financed the residential real property located at 408 Hadley Ave, Dayton, OH 45419 ("Home") with a Note secured by a Mortgage (collectively the "Mortgage Loan").

25. At the time Mr. Abston financed his Home, he was married.

26. However, Mr. Abston's wife did not execute the Note.

27. Mr. Abston's ex-wife did not have any personal liability on the Note.

28. In or around 2014, Mr. Abston and his wife got a dissolution.

29. The Dissolution Decree and Separation Agreement are public record and available online via the Montgomery County Clerk of Court's website.

30. As part of the Separation Agreement, Mr. Abston obtained sole title to the Home.

31. On or about October 13, 2014, Mr. Abston's ex-wife transferred any and all interest she had in the Home to Mr. Abston via a quit claim deed.

32. The Quit Claim Deed was a public record filed with the Montgomery County Recorder on or about October 22, 2013.

33. At some point, ownership of the Mortgage Loan was allegedly transferred to Freddie Mac.

34. Freddie Mac assigned servicing rights to Nationstar.

35. At all relevant times, Nationstar was servicing the loan on behalf of Freddie Mac.

36. At all relevant times, Nationstar was acting as an agent of Freddie Mac.

37. At all relevant times, Freddie Mac controlled, or had the right to control, the actions of Nationstar.

38. In or around mid to late 2017, Mr. Abston contacted Nationstar for help with his Mortgage Loan.

39. On or around September 15, 2017, Nationstar offered Mr. Abston a Trial Period Plan ("TPP") as a step to permanently modify the Mortgage Loan.

40. Under the TPP, Mr. Abston was to make three monthly payments in the amount $954.48 beginning in October 2017.

41. Mr. Abston made all three monthly payment under the TPP.

6

42. Nevertheless, on or about October 20, 2017, Nationstar filed a Complaint in foreclosure in the Court of Common Pleas of Montgomery County, Ohio, Case No.: 2017 CV 04923 (the "Foreclosure Action").

43. As part of the Foreclosure Action, Nationstar filed a Preliminary Judicial Report that included a title search on the Home.

44. The title search showed the quit claim deed transferring Mr. Abston's ex-wife's interest in the Home.

45. Nationstar did not list Mr. Abston's ex-wife as a party to the Foreclosure Action.

46. On or about December 5, 2018, Nationstar moved to stay the foreclosure action while it was "reviewing [Mr. Abston] for Loss Mitigation options."

47. On or about December 6, 2018, the state court administratively dismissed the Foreclosure Action subject to reactivation.

48. In or around January, 2018, Nationstar sent Mr. Abston a document entitled Freddie Mac Flex Modification Agreement ("Modification Agreement").  Exhibit A.

49. The Modification Agreement listed both Mr. Abston and his ex-wife as borrowers.

50. At the time, Nationstar had actual knowledge that Mr. Abston's ex-wife was not a borrower on the Mortgage Loan.

51. At the time, Nationstar had actual knowledge that Mr. Abston's ex-wife did not have an interest in the Home.

52. In or around January 2018, Mr. Abston called Nationstar and asked why his ex-wife's name was on the Modification Agreement.

53. During Mr. Abston's call with Nationstar, it instructed Mr. Abston to sign the Modification Agreement and send it to Nationstar.

54. During Mr. Abston's call with Nationstar, it instructed Mr. Abston to send in a copy of a divorce decree.

55. At the time, Nationstar was in possession of all documents necessary to show Mr. Abston's ex-wife did not have an interest in the property.

56. Following Mr. Abston's call with Nationstar, Mr. Abston signed and sent Nationstar the executed Modification Agreement. Exhibit A.

57. Nationstar received the executed Modification Agreement.

58. After Mr. Abston's call to Nationstar, it did not send Mr. Abston written notice that he needed to send in a divorce decree.

59. After receiving the executed Modification Agreement, Nationstar did not send Mr. Abston written notice that he needed to send in a divorce decree.

60. In February 2018, Mr. Abston made his monthly payment to Nationstar in the amount of $982.82 as listed in the Modification Agreement.

61. Nationstar accepted Mr. Abston's payment for February.

62. On or about February 20, 2018, Nationstar sent Mr. Abston a letter congratulating him on the successful completion of his loan modification (the "February Letter"). Exhibit B.

63. Despite the terms of the Modification Agreement, the February Letter stated Mr. Abston's monthly payment would increase to $1,153.99 beginning for the month of May. Exhibit B.

64. Mr. Abston relied on this letter in believing that Nationstar had permanently modified the Mortgage Loan.

65. In March 2018, Mr. Abston again made a monthly payment in the amount of $982.82.

66. Nationstar accepted Mr. Abston's payment for March.

67. In April 2018, Mr. Abston made a monthly payment in the amount of $982.82.

68. In April 2018, Nationstar refused to accept Mr. Abston's payment of $982.82.

69. In or around early May 2018, Mr. Abston called Nationstar to confirm the increased monthly payment according to the February Letter.

70. During the call, Nationstar told Mr. Abston that it denied the Modification Agreement because it was not signed by his ex-wife.

71. Nationstar did not send Mr. Abston notice stating the specific reasons why Nationstar denied the Modification Agreement.

72. In or around May 2018, Mr. Abston called Nationstar approximately 30 times to get a complete explanation regarding the denial of the Modification Agreement and what he could do to resolve the issue.

73. On or about May 7, 2018, Nationstar instructed Mr. Abston to send in a copy of a divorce decree.

74. During the call on or about May 7, 2018, a representative of Nationstar provided Mr. Abston with an email address to send in a copy of the divorce decree.

75. Following Mr. Abston's calls with Nationstar in May of 2018, Nationstar did not send Mr. Abston written notice that he needed to send in a divorce decree.

76. On or about May 9, 2018, Mr. Abston emailed Nationstar a copy of the Dissolution Decree and Separation Agreement.

77. On or about May 9, 2018, Nationstar moved to reactivate the Foreclosure Case, stating the parties could not reach an agreement through loss mitigation.

78. On or about May 11, 2018, the state court reactivated the Foreclosure Case.

79. On or about May 16, 2018, Nationstar moved for default judgment in the Foreclosure Case.  Exhibit C.

80. On or about May 22, Mr. Abston called to confirm that Nationstar had received the Dissolution Decree and Separation Agreement.

81. During the call, Nationstar did not tell Mr. Abston that it had resumed foreclosure activity.

82. During that call, Nationstar claimed it had not received the Dissolution Decree and Separation Agreement.

83. During the call, Nationstar stated that it had given Mr. Abston the wrong email address.

84. During the call Nationstar was eventually able to find the Dissolution Decree and Separation Agreement.

85. During the call, Nationstar told Mr. Abston he would have to re-apply for loss mitigation.

86. On or about May 31, 2018, the state Court granted Nationstar judgment in foreclosure against Mr. Abston.  Exhibit D.

87. On or about September 17, 2018, servicing of the Mortgage Loan transferred from Mr. Cooper to Shellpoint.

88. When Shellpoint acquired serving rights, it did not recognize the Modification Agreement.

89. Shellpoint treated the Mortgage Loan as if it were in default upon obtaining its servicing rights.

90. Since acquiring service rights, and continuing to the present, Shellpoint has sent multiple monthly statement and notices demanding payment and threatening to commence foreclosure. Exhibit E.

91. The notices and statements sent by Shellpoint contain amounts that are not authorized under the terms of the Note, Mortgage, and Modification Agreement. Exhibit E.

92. The notices and statements sent by Shellpoint threaten to take legal action that it is not entitled to take. Exhibit E.

93. As a result of all Named Defendants' actions, Mr. Abston has suffered damages, including but not limited to excessive fees, costs, interest and charges assessed against the Loan, and loss of credit.

94. As a result of Nationstar and Shellpoint's actions, Plaintiff suffers severe emotional distress, including but not limited to anxiety, stress, and sleepless nights.

95. As a result of Nationstar and Freddie Mac's actions, Plaintiff has suffered damages, including but not limited to the pending loss of his Home and all equity therein.

96. As a result of all named Defendants' actions, Mr. Abston incurred the legal fees and expense of brining this lawsuit.

### VI. COUNT ONE– RESPA

97. Mr. Abston incorporates all of the paragraphs in this Complaint by reference as though fully written here.

98. Nationstar's actions described in this Complaint constitute violations of RESPA, 12 U.S.C. § 1601, *et seq.*, and Regulation X, and 12 C.F.R. § 1024.41.

99. Mr. Abston had a complete Application pursuant to 12 C.F.R. § 1024.41.

100. By failing to exercise reasonable diligence in obtaining documents and information to allegedly complete the application, Nationstar violated Regulation X, 12 C.F.R. § 1024.41(b)(1).

101. By failing to provide Mr. Abston with the correct notices, Nationstar violated Regulation X, 12 C.F.R. § 1024.41(b)(2)(i)(B).

102. By failing to identify what additional documents Mr. Abston needed to submit, Nationstar violated Regulation X, 12 C.F.R. § 1024.41(b)(2)(i)(B).

103. By failing to provide Mr. Abston with notice of a reasonable date to submit additional documents, Nationstar violated Regulation X, 12 C.F.R. § 1024.41(b)(2)(ii); 1024.41(c)(3)(i)(E).

104. By failing to provide a reasonable period of time to fulfill all requirements after Mr. Abston made TPP payments, Nationstar violated Regulation X, 12 C.F.R. § 1024.41(e)(2)(ii).

105. By failing to send Mr. Abston notice of the specific reasons that Nationstar denied him for a permanent loan modification, Nationstar violated Regulation X, 12 C.F.R. § 1024.41(d).

106. By failing to inform and provide Mr. Abston the right to appeal the denial of the permanent loan modification, Nationstar violated Regulation X, 12 C.F.R. § 1024.41(h)(2); 1024.41(c)(1)(ii).

107. By moving for default judgment in the Foreclosure Action, Defendant violated Regulation X, 12 C.F.R. § 1024.41(g).

108. Nationstar regularly fails to evaluate and process its borrowers' loss mitigation applications in compliance with RESPA and Regulation X.

109. Nationstar regularly fails to follow the law in its administration of foreclosure lawsuits it brings against borrowers in compliance with RESPA and Regulation X.

110. Nationstar has engaged in a pattern or practice of non-compliance with the requirements of RESPA and Regulation X.

111. As a result of Nationstar's actions, Plaintiff incurred actual damages, including but not limited to excessive fees, costs, interest and charges assessed against the Loan, the loss of credit, and the pending loss of his Home and all equity therein.

112. As a result of Nationstar's actions, Mr. Abston suffers severe emotional distress, including but not limited to anxiety, stress, and sleepless nights.

113. Due to these violations, Nationstar is liable to Mr. Abston for actual damages to be determine at trial, additional damages in the amount of at least $2,000, plus attorney fees, and costs of the action, including pursuant to 12 U.S.C. § 2605(f).

## VII. COUNT TWO– FDCPA - SHELLPOINT

114. Mr. Abston incorporates all of the paragraphs in this Complaint by reference as though fully written here.

115. Shellpoint's actions described in this Complaint constitute violations of the FDCPA, 15 U.S.C. § 1692, *et seq.*

116. Shellpoint's actions constitute false, deceptive, or misleading representations in connection with the collection of the debt in violation of 15 U.S.C. § 1692e, including but not limited to:

   a. Falsely representing the legal status, character, or amount of the debt in violation of the FDCPA, 15 U.S.C. 1692e(2)(A).

   b. Falsely representing its ability to collect on the alleged debt in violation of the FDCPA, 15 U.S.C. 1692e(5).

117. Shellpoint's actions constitute unfair or unconscionable means in connection with the collection of the debt in violation of 15 U.S.C. § 1692f, including but not limited to:

   a. Attempting to collect interest, fees, charges and expenses that are not expressly authorized by the Note, Mortgage, and Modification Agreement in violation of FDCPA, 15 U.S.C. 1692f(1).

118. As a result of Shellpoint's actions and communications to collect a debt, Mr. Abston suffered emotional distress, sleepless nights, excessive stress, and anxiety.

119. As a further result of Shellpoint's actions and communications to collect a debt, Mr. Abston incurred actual damages, including but not limited to excessive fees, costs, interest and charges assessed against the loan.

120. Shellpoint is liable to Mr. Abston for damages, including but not limited to his actual damages, including under 15 U.S.C. § 1692k(a)(2)(A); the costs of this action and attorney fees, including pursuant to 15 U.S.C. § 1692k(a)(3) and other relief as this Court deems just and necessary.

## VIII. COUNT THREE – BREACH OF CONTRACT – FREDDIE MAC

121. Mr. Abston incorporates all of the paragraphs in this Complaint by reference as though fully written here.

122. As described in the Factual Allegations, Mr. Abston and Freddie Mac had a valid and enforceable agreement when he signed and returned the Modification Agreement. Exhibit B.

123. The terms of the Modification Agreement are clear and definite.

124. Mr. Abston satisfied all conditions precedent, if any.

125. Mr. Abston substantially performed his obligation under the Modification Agreement.

126. Mr. Abston made payments under the Modification Agreement.

127. Freddie Mac materially breached the terms of the Modification Agreement by the actions described in this Complaint.

128. Freddie Mac materially breached the terms of the Modification Agreement through the actions of its agent, Nationstar.

129. Freddie Mac materially breached the terms of the Modification Agreement by failing to modify the terms of the Mortgage Loan.

130. Freddie Mac materially breached the terms of the Modification Agreement by refusing to accept Mr. Abston's payments.

131. Freddie Mac materially breached the terms of the Modification Agreement by proceeding with foreclosure.

132. As a result of Freddie Mac's material breach, Mr. Abston has incurred damages.

133. Mr. Abston's damages include, but are not limited to, the cost of defending the Foreclosure Action, and the interest, fees, costs, and corporate advances that continue to accrue as Freddie Mac refuses to honor the Modification Agreement or accept payments.

134. Due to Freddie Mac's breach, Mr. Abston has been damaged in an amount to be determined at trial plus interest and costs.

## VIII. COUNT FOUR – ECOA – NATIONSTAR

135. Mr. Abston incorporates all of the paragraphs in this Complaint by reference as though fully written here.

136. Nationstar's actions described in this Complaint constitute violations of the ECOA, 15 U.S.C. § 1691, *et seq.*

137. Mr. Abston otherwise qualified for a loan modification.

138. Nationstar denied Mr. Abston's loan modification because his ex-wife did not sign the Modification Agreement.

139. Nationstar's requirement that Mr. Abston's ex-wife sign the Modification Agreement violated Regulation B, 12 C.F.R. § 202.7(d); 12 C.F.R. § 1002.7(d).

140. As a result of Nationstar's actions, Mr. Abston incurred actual damages, including but not limited to excessive fees, costs, interest and charges assessed against the Loan, the loss of credit, and the pending loss of his Home and all equity therein.

141. As a result of Nationstar's actions, Mr. Abston suffers severe emotional distress, including but not limited to anxiety, stress, and sleepless nights.

142. Nationstar is liable to Mr. Abston for damages including, but not limited to, his actual damages including under 15 U.S.C. § 1691e(a); the costs of this action and attorney fees, including pursuant to 15 U.S.C. § 1691e(d) and other relief as this Court deems just and necessary.

**PRAYER FOR RELIEF**

**WHEREFORE**, Mr. Abston respectfully prays that this Court:

143. Assume jurisdiction of this case;

144. Award Mr. Abston maximum damages on the Counts, including the maximum statutory damages available, the maximum economic and non-economic damages available, including actual, emotion, general, punitive, and other damages;

145. Award Mr. Abston actual damages to be established at trial including pursuant to 12 U.S.C. § 2605(f);

146. Award Mr. Abston statutory damages in the amount of at least $2,000.00, plus attorney fees, and costs of the action, including pursuant to 12 U.S.C. § 2605(f);

147. Award Mr. Abston actual damages to be established at trial including pursuant to 15 U.S.C. § 1692(k)(a)(1);

148. Award Mr. Abston statutory damages in the amount of at least $1,000.00, plus attorney fees, and costs of the action, including pursuant to 15 U.S.C. § 1692k(a)(2)(A);

149. Declare Nationstar's actions violated RESPA;

150. Declare Shellpoint's actions violate the FDCPA;

151. Declare Freddie Mac's actions constitute breach of contract;

152. Award Mr. Abston additional damages and costs;

153. Award such other relief as the court deems appropriate.

Dated this 25th Day of June 2019.

          Respectfully Submitted,
          DOUCET & ASSOCIATES CO., L.P.A.

          */s/ Andrew J. Gerling*
          Andrew J. Gerling (0087605)
          *Attorney for Plaintiff*
          700 Stonehenge Parkway, Suite 2B
          Dublin, OH  43017
          (614) 944-5219 PH
          (818) 638-5548 FAX
          andrew@doucet.law

## JURY TRIAL DEMANDED

Plaintiff respectfully requests a jury trial on all triable issues of fact.

                                          */s/ Andrew J. Gerling*
                                          Andrew J. Gerling