IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DONALD C. ABSTON,

      Plaintiff,

      v.

NEW PENN FINANCIAL LLC,
d/b/a SHELLPOINT MORTGAGE
SERVICING, et. al.,

      Defendants.

:

:

:

:

Case No. 3:19-cv-195

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING THE MOTION TO DISMISS OF
DEFENDANT NATIONSTAR MORTGAGE LLC (DOC. # 9) AS TO
COUNT IV AND OVERRULING AS TO COUNT I; SUSTAINING THE
MOTION TO DISMISS OF DEFENDANT NEWREZ LLC, F/K/A NEW
PENN FINANCIAL, LLC, D/B/A SHELLPOINT MORTGAGE
SERVICING (DOC. # 11); AND SUSTAINING THE MOTION TO
DISMISS OF DEFENDANT FEDERAL HOME LOAN MORTGAGE
CORPORATION (DOC. #12)

---

The case before this Court concerns a May 31, 2018, entry of a default

judgment in a state court foreclosure action against Plaintiff, Donald C. Abston,

("Plaintiff"). Following that judgment, Plaintiff timely filed a motion, pursuant to

Ohio R. Civ. P. 60(B), for relief from the default judgment of foreclosure. This

motion was denied by the state trial court on December 17, 2018. Plaintiff then

filed an appeal in the Second District Court of Appeals on January 4, 2019, and on

July 26, 2019, the state appellate court issued its decision affirming the trial court.

Before the state appellate court's decision was issued, however, Plaintiff filed his Complaint in this Court, on June 25, 2019. Doc. #1.

The Complaint names three Defendants: Nationstar Mortgage LLC, ("Nationstar"); NewRez LLC, f/k/a New Penn Financial, LLC, d/b/a Shellpoint Mortgage Servicing ("Shellpoint"); and Federal Home Loan Mortgage Corporation ("Freddie Mac"). Four causes of action are alleged against these Defendants: (1) Count I, the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, et seq., and Regulation X, 12 C.F.R. §§ 1024.41 et seq., against Nationstar; (2) Count II, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, against Shellpoint; (3) Count III, breach of contract against Freddie Mac; and (4) Count IV, the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, et seq., and Regulation B, 12 C.F.R. § 202 et seq., and 12 C.F.R. § 1002 et seq., also against Nationstar.

This matter is before the Court pursuant to the following motions to dismiss: (1) Motion to Dismiss filed by Nationstar, pursuant to Fed. R. Civ. P. 12(b)(6), Doc. #9; (2) Motion to Dismiss filed by Shellpoint, pursuant to Fed. R. Civ. P. 12(b)(1) and (6), Doc. #11; and (3) Motion to Dismiss filed by Freddie Mac pursuant to Fed. R. Civ. P. 12(b)(1) and (6), Doc. #12. Plaintiff has filed a Memorandum in Opposition to the Motion to Dismiss of Nationstar, Doc. #10, and a Memorandum in Opposition to the Motion to Dismiss of Shellpoint and Freddie Mac, Doc. #17. Replies were filed by Nationstar, Doc. # 13, and Shellpoint and Freddie Mac, Doc. #18. The matter is now ripe for decision.

I.  Standard of Review

Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The complaint must provide the defendant with "fair notice of what the. . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint on the basis that it "fail[s] to state a claim upon which relief can be granted."  The moving party bears the burden of showing that the opposing party has failed to adequately state a claim for relief. *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)).  The purpose of a motion to dismiss under Rule 12(b)(6) "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).  In ruling on a 12(b)(6) motion, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis,* 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Treesh*, 487 F.3d at 476). Nevertheless, to survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  Unless the facts alleged show that the plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint must be

dismissed." *Id.* Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Although legal conclusions "must be supported by factual allegations" that give rise to an inference that the defendant is, in fact, liable for the misconduct alleged," . . .he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 678-79.

In ruling on a Rule 12(b)(6) motion, a court generally only considers the plaintiff's complaint. If, however, "... a plaintiff references or quotes certain documents, ... a defendant may attach those documents to its motion to dismiss, and a court can then consider them in resolving the Rule 12(b)(6) motion without converting the motion to dismiss into a Rule 56 motion for summary judgment." *Watermark Senior Living Retirement Communities, Inc. v Morrison Management Specialists, Inc.*, 905 F. 3d 421, 425 (6th Cir. 2018) (quoting *In re Omnicare, Inc. Sec. Litig., (Omnicare III)*, 769 F.3d 455, 466 (6th Cir. 2014). *See, Kline v. Mortgage Electronic Registration Systems, Inc.*, No. 3:08-cv-408, 2010 WL 1372401, *4-5 (S.D. Ohio Western Division, March 29, 2010) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S.Ct. 2499, 168 (2007).

A challenge to the subject matter jurisdiction of the United States District Court under Rule 12(b)(1) of the Federal Rules of Civil Procedure may either be

facial or factual. *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir.2012). A facial challenge requires all the plaintiff's allegations to be accepted as true, "much as with a Rule 12(b)(6) motion." *Id.* In contrast, a factual challenge to the court's subject matter jurisdiction allows the court to "weigh evidence to confirm the existence of the factual predicates for subject matter jurisdiction," without presuming the truth of the allegations. *Id.* (citing *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir.1996)). Here, Respondent's challenges to the Court's subject matter jurisdiction are purely legal. As such, the Court will assume all of Plaintiff's factual allegations to be true, as with the standard of review for a motion made under Rule 12(b)(6).

## II. Background Facts

On February 15, 2013, Plaintiff financed certain residential real property located at 408 Hadley Avenue in Dayton, Ohio ("Home"). Plaintiff signed a promissory note ("Note") and he and his former wife both executed a mortgage ("Mortgage") with PNC Bank (collectively the "Mortgage Loan"). Doc. #1, PAGEID#5. In 2014, however, Plaintiff and his wife filed a Dissolution Decree and Separation Agreement in Montgomery County, Ohio. *Id.*, PAGEID#6. Thereafter, Plaintiff's ex-wife executed a quit claim deed to Plaintiff, on October13, 2014, which was then filed with the Montgomery County Recorder on October 22, 2014. *Id.*, PAGEID#6. The Complaint alleges that at some unspecified time, PNC

5

transferred the Mortgage Loan to Freddie Mac and servicing rights were assigned to Nationstar. *Id.*

In mid to late 2017, Plaintiff contacted Nationstar for help with his Mortgage Loan and on September 15, 2017, Nationstar offered Plaintiff a "Trial Period Plan" ("TPP"), as a step to permanently modify the Mortgage Loan. *Id.* The TPP required Plaintiff to make three monthly payments in the amount of $954.48, beginning in October 2017. Plaintiff alleges that he made all three of these payments. *Id.*

On October 20, 2017, however, Nationstar filed a foreclosure Complaint in the Common Pleas Court of Montgomery County, Ohio, Case No. 2017 CV 04923 (the "Foreclosure Action"). *Id.*, PAGEID#7. As part of the Foreclosure Action, Nationstar filed its Preliminary Judicial Report which showed, among other things, that Plaintiff's former wife had executed a quit claim deed transferring her interest in the Home to Plaintiff. *Id.* On December 6, 2018, the Foreclosure Action was administratively dismissed, subject to reactivation. *Id.*

In January 2018, Nationstar sent Plaintiff a Freddie Mac document entitled "Flex Modification Agreement" ("Modification Agreement") which listed both Plaintiff and his ex-wife as borrowers. Following receipt of this agreement, Plaintiff allegedly called Nationstar and asked why his ex-wife's name was on the Modification Agreement. *Id.* Plaintiff alleges that he was orally instructed to sign the Modification Agreement and send it and a copy of the divorce decree to Nationstar. *Id.*, PAGEID#8. Plaintiff signed and sent Nationstar the executed

6

Modification Agreement. He alleges that he never received any written request from Nationstar to send a copy of the divorce decree. *Id*

In February 2018, Plaintiff made his monthly payment to Nationstar in the amount of $982.82, as listed in the Modification Agreement. *Id.* On February 20, 2018, Nationstar sent Plaintiff a letter congratulating him on the successful completion of his loan modification (the "February Letter"). *Id.* The February Letter stated Plaintiff's monthly payment would increase to $1,153.99, beginning for the month of May. *Id.* Although Plaintiff made his March and April 2018 monthly payments, Nationstar refused to accept Plaintiff's April monthly payment. *Id.*, PAGEID#9.

In early May 2018, Plaintiff called Nationstar to confirm the increased monthly payment and learned that the Modification Agreement was denied, because it was not signed by his ex-wife. *Id.*, PAGEID#9. Plaintiff alleges that sometime in May 2018, he called Nationstar approximately 30 times regarding the denial of the Modification Agreement and to find out how to resolve the issue. *Id.*

On May 7, 2018, Nationstar instructed Plaintiff to send a copy of a divorce decree via email and gave him an email address. *Id.* On May 9, 2018, Plaintiff complied with this request by emailing Nationstar the Dissolution Decree and Separation Agreement. *Id.*, PAGEID#10. On May 9, 2018, Nationstar filed a motion in state court to reactivate the Foreclosure Action, and on May 16, 2018, Nationstar moved for default judgment in that Action. *Id.* Plaintiff alleges that, although he spoke with Nationstar on May 22, 2018, to confirm their receipt of the

7

Dissolution Decree and Separation Agreement, he was not told by them that the Foreclosure Action had been resumed. *Id.* During this call, Plaintiff learned that Nationstar had previously given him the wrong email address. It was confirmed during the May 22 call, however, that Nationstar did have the documents. *Id.* Plaintiff was told that he would have to re-apply for loss mitigation. *Id.*

On May 31, 2018, a default judgement was entered in favor of Nationstar in the Foreclosure Action. *Id.*, PAGEID#11. On July 13, 2018, Plaintiff filed a motion for relief from judgment, pursuant to Ohio R. Civ. P. 60(B) ("Rule 60(B)"). Doc. #11-1, PAGEID#275.

On September 17, 2018, servicing of the Mortgage Loan was transferred from Nationstar to Shellpoint. *Id.* According to the Complaint, Shellpoint has treated the Mortgage Loan as if it were in default, and has sent multiple monthly statement and notices demanding payment and threatening to commence foreclosure. *Id.*, PAGEID#11. Plaintiff alleges that Shellpoint has threatened to take legal action that it is not entitled to take, and that the notices and statements it has sent to Plaintiff contain amounts that are not authorized under the terms of the Note, Mortgage, and Modification Agreement. *Id.*

On December 17, 2018, the state trial court denied the Rule 60(B) motion. Doc. #11-1, PAGEID#304. Plaintiff filed an appeal of the trial court's judgment overruling his motion and, on July 26, 2019, the judgment was affirmed by the Second District Court of Appeals. Doc. #11-1, PAGEID#331. *Nationstar Mortgage, L.L.C. v. Abston*, No. 28252, 2019 WL 3381799 (Ct. App. Ohio Second District, July

8

26, 2019), 2019-Ohio-3003. The appellate court agreed with the trial court that the Modification Agreement was not a binding contract.

Plaintiff has alleged that due to the actions of Shellpoint, Nationstar and Freddie Mac, he has suffered damages including excessive fees, costs, interest and charges that have been assessed against the Loan. He also alleges that he has suffered loss of credit, severe emotional distress, anxiety and stress due to the pending loss of his Home and equity and has incurred legal fees. *Id.*, PAGEID#11.

Before analyzing Nationstar's motion to dismiss the RESPA and ECOA claims alleged against it, the Court will consider the motions to dismiss filed by Shellpoint for its alleged violation of the FDCPA and Freddie Mac on Plaintiff's alleged breach of contract claim.

III. Legal Analysis

A. Plaintiff's Claim Against Shellpoint for Violation of the FDCPA (Count II) and Freddie Mac for Breach of Contract (Count III)

1. Introduction

According to the Complaint, the state trial court entered the default judgment of foreclosure against Plaintiff on May 31, 2018, and Shellpoint began servicing the Mortgage Loan in September 2018. Plaintiff alleges that Shellpoint is liable under the FDCPA because it failed to recognize the Modification Agreement and incorrectly treated Plaintiff as if he were in default of the Note. As such, the

Complaint alleges that the statements and notices that Shellpoint sent to Plaintiff stated the wrong amount and that it had no right to foreclose on the Home. Doc. #1, PAGEID##10-11.

With respect to Freddie Mac, Plaintiff alleges that this Defendant breached its contract by failing to honor the Modification Agreement negotiated through Nationstar, its loan servicer. *Id*., PAGEID##15 and 16.

Shellpoint and Freddie Mac have both filed motions for dismissal of the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6). The Court will first address the arguments of these Defendants that this Court lacks subject matter jurisdiction under Rule 12(b)(1) due to the Rooker-Feldman Doctrine. The Court will then review whether Plaintiff has failed to state a claim under Rule 12(b)(6).

2. The Rooker-Feldman Doctrine and Fed. R. Civ. P. 12(b)(1)

Shellpoint and Freddie Mac have both filed motions, pursuant to Fed. R. Civ. P. 12(b)(1), arguing that this Court lacks subject matter jurisdiction pursuant to the Rooker-Feldman Doctrine. In general, this doctrine bars "lower federal courts from conducting appellate review of final state-court judgments because 28 U.S.C. § 1257 vests sole jurisdiction to review such claims in the Supreme Court." *VanderKodde v. Mary Jane M. Elliott, P.C.,* - F.3d - , Nos. 19-1091/1127/1128, 2020 WL 913288 (6th Cir., Jan. 29, 2020)(citing *Berry v. Schmitt*, 688 F.3d 290, 298 (6th Cir. 2012); see *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, (1983); *Rooker v. Fidelity Trust Co*., 263 U.S. 413, 44 S.Ct. 149 (1923)). Shellpoint and Freddie Mac contend that because "[T]he Rooker-Feldman doctrine bars re[-]

litigation of claims actually raised in state-court proceedings as well as claims that are inextricably intertwined with claims asserted in those proceedings," the application of this doctrine precludes this Court from considering Plaintiff's claims for violation of the FDCPA and breach of contract. *Mullins v. Pennymac Loan Servs.*, LLC, No. 3:16-cv-137, 2016 WL 4400758, at *1 (S.D. Ohio Aug. 18, 2016), report and recommendation adopted, No. 3:16-cv-137, 2016 WL 4733159 (S.D. Ohio Sept. 8, 2016), citing *Catz v. Chalker*, 142 F.3d 279, 293 (6th Cir. 1998).

In response to Shellpoint and Freddie Mac's motions to dismiss for lack of jurisdiction, Plaintiff argues that the Rooker-Feldman Doctrine is limited in scope and that this Court has jurisdiction because the claims alleged in this case are independent of the state court judgment. *Exxon Mobil v. Saudi Basic Industries Corp.*, 544 U.S. 280, 293, 125 S.Ct. 1517 (2005) ("If a federal plaintiff presents an independent claim, even one that denies a state court's legal conclusion... there is jurisdiction."); *Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007).

Under Rooker–Feldman, federal district courts lack jurisdiction only if (1) the case is brought by parties unsuccessful in state court and the injuries complained of are caused by state-court judgments, (2) the state-court judgment is rendered prior to the commencement of the district court proceedings and (3) the parties are seeking a review by the district court to reject the state-court judgment. *Exxon–Mobil Corp.,* 544 U.S. at 284 (2005). As stated by the Sixth Circuit, "[I]n *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, the Supreme Court made clear that the Rooker-Feldman doctrine—which prohibits the lower federal courts from

11

reviewing appeals of state-court decisions—applies only to an exceedingly narrow set of cases. 544 U.S. 280, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005)." *VanderKodde*, 2020 WL 913288, at *1.

In *VanderKodde*, the plaintiffs alleged that writs of garnishment filed by the defendants violated the FDCPA and Michigan consumer law. The district court dismissed, stating that the court lacked jurisdiction under the Rooker-Feldman Doctrine. The Sixth Circuit, however, reversed the district court, stating that the garnishment proceeding was not a judgment but a "ministerial process" performed by the clerk of the state court who has a "nondiscretionary obligation to issue the writ if the request 'appears to be correct.'" *Id.*, at *4 (citations omitted). Additionally, the Court noted that the plaintiff's injuries stemmed from the defendant's conduct since the complaint, by alleging a violation due to "'calculating post [-] judgment interest [in the writs of garnishment] at a rate higher than' Michigan law allows." *Id.* Accordingly, the Court determined that the plaintiffs had alleged injuries that were separate and independent from the underlying state court judgment and, thus, the Rooker-Feldman Doctrine did not apply.

### 3. Freddie Mac and Shellpoint's Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)

With respect to the Plaintiff's claim for breach of contract alleged against Freddie Mac, the Court lacks jurisdiction under the Rooker-Feldman Doctrine. Plaintiff's Complaint alleges that Freddie Mac, through the actions of its loan

servicer, Nationstar, breached its contract by failing to honor the Modification

Agreement that Nationstar negotiated with Plaintiff. In the Order Denying Motion

for Relief from Judgment" ("Order") filed by Plaintiff, the state trial court found

that Plaintiff lacked a meritorious claim under Ohio R. Civ. P. 60(B) because

Nationstar, a/k/a "Mr. Cooper," had not entered into a Loan Modification with

Plaintiff.

> The Sept. 15 letter also clearly provided that a permanent loan
> modification would be effective upon the following: Abston timely
> making the three TPP payments, Abston signing and returning the
> Modification Agreement, **and Mr. Cooper signing the Agreement**. In
> addition, Abston was told that he would need to provide a copy of his
> divorce decree. While the evidence shows that Abston timely made
> the three TPP payments and signed and returned the Agreement, it
> also shows that Abston did not provide a copy of his divorce decree.
> Consequently, Mr. Cooper did **not** sign the Agreement, but rather
> mailed a new copy of the Agreement to Abston. Abston, however,
> did not return the new copy of the Agreement, nor did he provide a
> copy of his divorce decree. Accordingly, Mr. Cooper mailed Abston a
> letter advising him that he had not been approved for the loan
> modification. Thereafter, Mr. Cooper waited more than one month
> before moving to reactivate the proceedings and for default
> judgment.

Doc. 12-1, PAGEID#406 (emphasis in original).

Although Plaintiff's claim in this case is against Freddie Mac and not

Nationstar, there is no dispute but that Nationstar represented Freddie Mac in the

Foreclosure Action and, as such, is in privity with them. *Becherer v. Merrill Lynch,*

*Pierce, Fenner, and Smith, Inc.*, 193 F.3d 415, 422 (6th Cir.1999)(defining a privy as

a successor in interest, a nonparty who controlled the original suit, and a nonparty

who is adequately represented by a party in the original suit).

In *McCormick v. Braverman*, 451 F.3d 382 (6th Cir. 2006), the plaintiff brought a § 1983 claim and a state-law action against the administrator and past administrator of her father's estate alleging an unlawful seizure of real property conveyed to her by her mother prior to her parents' divorce proceeding. The plaintiff in *McCormick* also brought a separate § 1983 action against the receiver and homeowner's insurer alleging unlawful seizure of the property and of the proceeds of an insurance policy. The district court dismissed all claims for lack of subject matter jurisdiction. In affirming the dismissal, the Court of Appeals held that the Rooker-Feldman Doctrine barred the plaintiff's claim against the receiver and homeowner's insurer alleging that the order of receivership itself violated due process since there was privity between the daughter and the losing party in the state court case.

> The question then becomes whether the Rooker–Feldman doctrine should apply to a federal plaintiff in privity with a party in the state court proceeding . . .Under a more moderate interpretation, a person in privity with the actual party who loses in state court may be deemed a state-court loser. We find that the latter interpretation is appropriate. The Rooker–Feldman doctrine prevents a party who loses in state court from appealing that decision to the lower federal courts, as only the Supreme Court has appellate jurisdiction over state court decisions. It would be inconsistent to disallow the party in the state suit to raise a federal claim but to allow his privy to bring the exact same claim. A state party may not circumvent the Article III jurisdictional provisions simply by substituting a privy's name for his own in the federal claim

*Id.*, at 395-396.

Similarly, it would be inconsistent to permit Plaintiff, a state court loser as to Nationstar for breach of contract, to file a federal suit against Freddie Mac, the

14

principal of Nationstar and in privity with it, in federal court. Accordingly, Freddie Mac's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction is sustained.

The Rooker-Feldman Doctrine, however, does not apply to the FDCPA claim asserted by Plaintiff against Shellpoint. Shellpoint was not a party to the Foreclosure Action, and the source of Plaintiff's alleged injury is not the judgment in the Foreclosure Action but Shellpoint's alleged subsequent violation of the FDCPA.

> The inquiry then is the source of the injury the plaintiff alleges in the federal complaint. If the source of the injury is the state court decision, then the Rooker–Feldman [D]octrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim.

*Id.*, at 393.

 Because Plaintiff's claims against Shellpoint are independent and subsequent to the state court Order, the Rooker-Feldman Doctrine does not deprive this Court of jurisdiction in this case. Shellpoint's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) is overruled.

4. Fed. R. Civ. P. 12(b)(6) and Issue Preclusion

Shellpoint next argues that because the state court proceedings determined that the Modification Agreement was not a binding contract, Plaintiff's FDCPA claim against Shellpoint cannot be relitigated in federal court. In making this argument, Defendant asserts that the doctrine of collateral estoppel or issue

preclusion applies.[1] *Doe ex rel. Doe v. Jackson Local Schs. Sch. Dist., No. 10–3272*, 422 Fed. Appx. 497, 500 (6th Cir. May 11, 2011). Issue preclusion "refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided," *Rawe v. Liberty Mut. Fire Ins. Co*, 462 F.3d 521, 528 n.5 (6th Cir. 2006), and "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892, 128 S.Ct. 2161, (2008) (internal quotation marks and citation omitted). Ohio law determines whether Shellpoint and Freddie Mac prevail under preclusion principles. *Exxon Mobil Corp.*, 544 U.S. at 291-292.

For issue preclusion to apply under Ohio law, Defendant must establish four elements:

> (1) A final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue; (2) The issue must have been actually and directly litigated in the prior suit and must have been necessary in the final judgment; (3) The issue in the present suit must have been identical to the issue in the prior suit; [and] (4) The party against whom estoppel is sought was a party or in privity with the party to the prior action.

*Smith v. Lerner, Sampson, & Rothfuss, L.P.A.*, 658 Fed.Appx. 268, 278-279 (6th Cir. 2016)(unpublished)(*citing In re Wilcox*, 229 B.R. 411, 415–16 (Bankr. N.D. Ohio 1998); *See Mitchell v. Intl Flavors & Fragrances, Inc.*, 179 Ohio App.3d 365, 371 (2008).

---

[1] Although styled in the motions to dismiss as "res judicata," Shellpoint argues "issue preclusion" in its motion. Doc. #11, PAGEID#263; Doc. #12, PAGEID#365.

Shellpoint contends that all four elements of issue preclusion are established. It asserts that the state court entry of default judgment and the Order are final judgments and that the Order establishes that Plaintiff had a full and fair opportunity to litigate. Doc. #11-1, PAGEID##304-312. Defendant argues that the Order also shows that the issue of whether the Modification Agreement was a binding contract was "actually and directly litigated" in state trial court and was considered by the appellate court and, therefore, necessary in deciding the Rule 60(B) motion. Finally, Shellpoint asserts, and Plaintiff does not suggest otherwise, that the issue of the validity of the Modification Agreement is identical in both this case and the state court case and that the parties are the same or are in privity.

Plaintiff argues, however, that issue preclusion "is not proper" in this case and that "res judicata is not a shield to protect the blameworthy." *Davis v. Wal-Mart Stores, Inc.*, 93 Ohio St. 3d 488, 492 (2001). He contends that the default judgment of foreclosure provided him no opportunity to litigate whether Shellpoint breached the Modification Agreement. Finally, Plaintiff asserts that the issue of whether the Modification Agreement was a binding contract was not "actually and directly litigated" in the state court case and if it was, it was not necessary to the Order. *Smith*, 658 Fed. Appx. at 279.

In reviewing the elements of issue preclusion, the Court finds that both the entry of default judgment of foreclosure and the Order are final judgments on the merits. *Duncan v. U.S. Bank, NA*, 574 Fed.Appx. 599, 602 (6th Cir. 2014) ("Ohio law recognizes that a default judgment is a valid and final judgment on the merits.")

*GMAC Mortgage, LLC v. Lee*, 2012 WL 949951, at *5 (Ohio Ct. App.) ("A judgment entry denying a Civ. R. 60(B) motion for relief from judgment is final and appealable, and, where a party fails to file a timely appeal ... res judicata applies to bar further litigation of the issues"); *see also Keymarket of Ohio, LLC v. Keller*, 483 Fed.Appx. 967, 971 (6th Cir. 2012) (holding that "the final decision for res judicata purposes was the court's denial of [the] motion for relief from judgment, not the underlying default judgment").

The next element of issue preclusion, did Plaintiff have a full and fair opportunity to litigate whether the Modification Agreement was a binding contract, is also established. Plaintiff's Rule 60(B) motion included as exhibits Plaintiff's affidavit, cancelled checks and correspondence to and from Plaintiff regarding the Mortgage Loan and Modification Agreement. Doc. ##11-1 and 12-1. Plaintiff argued in his motion that he had "meritorious defenses to present," stated that he and Nationstar had entered into a "loan modification" and that "a contract was formed." Doc. #11-1, PAGEID##278-279. ("When Mr. Abston and Mr. Cooper entered into a loan modification a contract was formed. Mr. Abston was making all of his payments timely and therefore was not in default when the foreclosure was filed nor when the case was reinstated. (See Ex. D at ¶¶ 6, 8 and 11). Thus, the foreclosure action was improper from the beginning.") In the alternative, Plaintiff argued in his Rule 60(B) motion that promissory estoppel applied. Based on the Court's review of Plaintiff's Rule 60(B) motion, Plaintiff had a full and fair opportunity to litigate whether the Modification Agreement was a

binding contract. *See King v. CitiMortgage, Inc.*, No. 2:10-cv-01044, 2011 WL 2970915 *8 (S.D. Ohio, July 20, 2011) (finding that the filing of a Rule 60(B) motion raising ownership in a foreclosure proceeding and later ruling on the motion established that the issue was expressly adjudicated).

Issue preclusion also requires that the issue be "actually and directly litigated" and that its determination be necessary in reaching the final judgment. In considering this element of issue preclusion, Plaintiff must have had "a fair opportunity to fully litigate and to be 'heard' in the due process sense." *Goodson v. McDonough Power Equipment, Inc.*, 2 Ohio St. 3d 193, 201 (1983). "Accordingly, an absolute due process prerequisite to the application of collateral estoppel is that the party asserting the preclusion must prove that the identical issue was actually litigated, directly determined, and essential to the judgment in the prior action." *Id.*; *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 482, 102 S.Ct. 1883 (1982) (as a constitutional minimum, state-court proceedings must "satisfy the applicable requirements of the Due Process Clause" for their decisions to warrant preclusive effect).

Plaintiff argued in his Rule 60(B) motion that he was not in default under the terms of his Mortgage Loan and had a "meritorious defense" because the Modification Agreement with Nationstar was a binding contract. As seen from the

Order, however, Plaintiff's arguments, both as to the Loan Modification and promissory estoppel, were rejected.[2]

Based on the Court's review of the state court proceedings, including the Rule 60(B) motion and Order, the Court finds that issue preclusion applies and that the Modification Agreement was not a binding contract. Because there was no binding Modification Agreement, Plaintiff was in default as found by the state trial court when it entered the default judgment of foreclosure against Plaintiff on May 31, 2018, and when the appellate court affirmed on July 26, 2019. As such, Plaintiff has failed to state a claim against Shellpoint for a violation of the FDCPA as alleged in Count II. Accordingly, Defendant Shellpoint's Rule 12(b)(6) motion to dismiss Count II, for violation of the FDCPA is sustained.

### B. Plaintiff's Claims Against Nationstar Under RESPA and Regulation X (Count I)

Plaintiff alleges that Nationstar violated RESPA, Regulation X, and 12 C.F.R. § 1024.41("Loss mitigation procedures"). RESPA is a consumer protection statute that governs the real estate settlement process for certain residential mortgage loans. Regulation X sets forth mortgage servicing rules for those loans. As a servicer of Plaintiff's loan, Nationstar was required to follow these rules.

---

[2] The trial court explained that "[T]he Court will refer to this document by its title – Freddie Mac Flex Modification Agreement, or Modification Agreement or agreement, for short. Such reference does not imply any finding or conclusion that the parties entered into an agreement to modify Abston's loan." Doc. #11-1, PAGEID#305.

Count I of the Complaint alleges that Plaintiff "had a complete Application," as defined in 12 C.F.R. § 1024.41, and that Nationstar committed eight different violations under this section. Doc. #1, PAGEID##12-13. The loss mitigation procedures that Nationstar allegedly violated consist of the following: (1) failing to exercise reasonable diligence in obtaining documents and information to complete the application (12 C.F.R. § 1024.41(b)(1)); (2) failing to provide Plaintiff with the correct notices (12 C.F.F. § 1024.41(b)(2)(i)(B)); (3) failing to identify what additional documents Plaintiff needed to submit (12 C.F.R. § 1024.41(b)(2)(i)(B)); (4) failing to provide Plaintiff with notice of a reasonable date to submit additional documents (12 C.F.R. §1024.41(b)(2)(ii) and 12 C.F.R. § 1024.41(c)(3)(i)(E)); (5) failing to provide a reasonable period of time to fulfill all requirements after Plaintiff made TPP payments (12 C.F.R. §1024.41(e)(2)(ii)); (6) failing to send Plaintiff notice of the specific reasons that Nationstar denied him for a permanent loan modification (12 C.F.R. § 1024.41(d)); (7) failing to inform and provide Plaintiff the right to appeal the denial of the permanent loan modification (12 C.F.R. § 1024.41(h)(2) and C.F.R. § 1024.41(c)(1)(ii)); and (8) by moving for default judgment (12 C.F.R. § 1024.41(g)).

Nationstar moves for dismissal under Fed. R. 12(b)(6), asserting that it did not violate RESPA in its handling of Plaintiff's Modification Agreement. It contends that five of the alleged violations of the loss mitigation procedures, §§ 1024.41(b)(1), 1024.41(b)(2)(i)(B), 1024.41(b)(2)(ii), 1024.41(c)(3)(i)(E) and 1024.41(e)(2)(ii)), as stated in paragraphs 100-104 of the Complaint, are

inapplicable to this case. This is so, according to Nationstar, because these loss mitigation procedures pertain to the loss mitigation application, option or trial loan modification plan and not to the permanent loan modification that Plaintiff was seeking. Defendant contends that the allegations of the Complaint establish that Plaintiff had already been approved ("pre-approved") for and accepted the TPP in October 2018. As support for its position that these sections are inapplicable, Nationstar cites *Shoen v. Bank of America, N.A.*, S.D. Ohio No. 17-cv-648, 2019 U.S. Dist. LEXIS 23460, at *22 (Feb. 13, 2019) ("Defendant's handling of the Required Documents submitted to obtain a permanent modification is not under the purview of § 1024.41(b)(1), because Plaintiff's loss mitigation application had already been approved.").

With respect to the remaining alleged loan mitigation procedure violations, §§1024.41(d), 1024.41(h)(2), 1024.41(c)(1)(ii) and 1024.41(g), referenced in paragraphs 105-107 of the Complaint, Nationstar argues that findings from the state appellate court decision, *Nationstar Mortgage, L.L.C. v. Abston*, have determined that no violation by Nationstar occurred. Finally, Defendant's motion to dismiss asserts that Plaintiff has failed to plead either actual or statutory damages as required by RESPA. Specifically, Nationstar contends that the Complaint fails to allege facts establishing a "causal connection" between his alleged damages and Nationstar's alleged RESPA violations. Doc. #9, PAGEID#139.

In his response to Nationstar's motion to dismiss, Plaintiff argues that he had a "loss mitigation application" and that this was alleged in the Complaint.

22

Doc. 10, PAGEID#208. "He reached out to Nationstar for help on his mortgage," Doc. #1, PAGEID#6, "expressed an interest in applying for loss mitigation" and "Nationstar offered Mr. Abston a TPP." *Id*.

Plaintiff further argues that his "[loss mitigation] application was complete" and that this fact is evidenced "[w]hen Nationstar offered Mr. Abston a TPP without requesting any additional documents." *Id*. Nationstar had,"at least at that time, all the information it required to evaluate him for available loss mitigation options." *Id*., PAGEID#208-209. Plaintiff further argues that

> Even if Mr. Abston did not have an application when Nationstar offered the TPP, he had an application when he submitted the dissolution decree in May. Nationstar blurs the lines by claiming Mr. Abston had already been approved and that the dissolution agreement was merely something he needed to submit to obtain the Loan Modification.

*Id*.

Because Plaintiff "properly pled facts supporting that (1) he had an application, (2) it was complete, and (3) Nationstar determined it needed additional documents," Doc. #1, PAGEID##6-8, he contends that RESPA was violated by Defendant. Plaintiff's response does not address Defendant's arguments regarding his allegations of violations of the Loss mitigation procedures in §§1041(c)(3)(i)(E), 1024.41(e)(2)(ii), 1024.41(h)(2) and 1024.41(c)(1)(ii). The response does assert, however, that the Complaint alleges violations of the Loss mitigation procedures in § 1024.41(d) (failing to provide notice of the specific reason for denial of the permanent loan modification), § 1024.41(h)(2) (failing to inform and provide Plaintiff the right to appeal the denial

of the permanent loan modification) and  § 1024.41(g) (moving for a default judgment of foreclosure). Plaintiff argues that the Complaint alleges that he was not given notice by Nationstar of the specific reason for denial of his Loan Modification and that none of the exceptions in § 1024.41(g) excuse Nationstar from moving for a default judgment of foreclosure on May 31, 2018.  Plaintiff further argues that the state court appellate decision does not apply, since it did not address any violations of Regulation X which are asserted in this case against Nationstar, and that, finally, Defendant "has confused the doctrine of issue preclusion with claim preclusion." Doc. #10, PAGEID#213.  With respect to Defendant's arguments concerning damages, Plaintiff argues that his Complaint adequately pleads damages and that a causal link exists since, based on the facts alleged, "reasonable inferences" can be made that Plaintiff suffered certain damages.  Additionally, statutory damages based on "pattern and practice" allegations have been properly pled, according to Plaintiff, since he has alleged that Defendant violated RESPA "at least seven times or more." *Id*., PAGEID#218.

RESPA, a remedial statute expanded in 1990 to encompass loan servicing, "is construed broadly to effectuate its purposes." *Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 719 (6th Cir. 2013) (debtor sufficiently alleged damages flowing from servicer's response to qualified written request and stated a claim under RESPA) (citations omitted).  A loss mitigation application is defined in the regulations as "an oral or written request for a loss mitigation option that is accompanied by any information required by a servicer for evaluation for a loss mitigation option."

24

§ 1024.31. Said applications are "considered expansively." 12 C.F.R. § 1024.41, Supp. I, cmt 41(b)(1), para. 2. Accordingly, loss mitigation applications "include any 'prequalification' for a loss mitigation application." *Id.* If a "borrower expresses an interest in applying for a loss mitigation option and provides information the servicer would evaluate in connection with a loss mitigation application[,] the borrowers' inquiry or prequalification request has become a loss mitigation application" *Id.* § 1024.41.

Based on the allegations of the Complaint, Plaintiff has pled that he had a loss mitigation application and in response was offered a TPP which "typically does not create a promise or binding agreement" *Wells Fargo Financial Ohio 1, Inc. v. Robinson*, 2d Dist. Champaign No. 2016-CA-23, 2017 WL 2223018, *4. Instead, a TPP "simply memorializes only a temporary deviation from the payment terms of the note and Mortgage pending approval of a permanent modification." *Wells Fargo Bank, N.A. v. Bielec*, No. 13AP–330, 2014 WL 1713125, *4. Plaintiff has pled that the TPP was a "step to permanently modify his Mortgage Loan." Doc. #1, PAGEID#6. Because Plaintiff has pled that he submitted a loss mitigation application, the Court does not find that the allegations of the Loss mitigation procedures in §§ 1024.41(b)(1), 1024.41(b)(2)(i)(B), 1024.41(b)(2)(ii), paragraphs 100, 101, 102 and 102, are inapplicable.[3]

---

[3] Because the Court finds that Plaintiff has pled that he submitted a loss mitigation application, the analysis of the court in *Schoen* is not relevant to this case.

With respect to Nationstar's alleged violations of §§ 1024.41(d) (failing to provide notice of the specific reason for denial of the permanent loan modification), 1024.41(h)(2) (failing to inform and provide Plaintiff the right to appeal the denial of the permanent loan modification and 1024.41(g) (moving for a default judgment of foreclosure), Defendant argues that no RESPA violation exists, because of "issue preclusion." Doc. #9, PAGEID#136; Doc. #13, PAGEID##433-435. Although Defendant identifies certain factual issues that it asserts were decided by the decision of the state appellate court, it fails to address the elements of issue preclusion, including whether the issues were actually and directly litigated and necessary to the final judgment. *Lerner, Sampson, & Rothfuss, L.P.A.* 658 Fed.Appx. at 278-279; *Mitchell,* 179 Ohio App.3d at 371. Accordingly, because the Court does not find that the "applicable requirements of the Due Process Clause" have been satisfied, it will not apply issue preclusion to the alleged violations of RESPA in §§ 1024.41(d), 1024.41(h)(2) and 1024.41(g). *Kremer*, 456 U.S. at 482.

Because Plaintiff's response does not address Nationstar's motion to dismiss regarding §§ 1024.41(c)(3)(i)(E), 1024.41(e)(2)(ii), 1024.41(h)(2) and 1024.41(c)(1)(ii), the Court finds that these claims have been abandoned. *Doe v. Bredesen*, 507 F.3d 998, 1007(6th Cir. 2007) (claims not raised in response to a motion to dismiss deemed abandoned); *Huge v. General Motors Corp.*, 62 Fed.Appx. 77, 79 (6th Cir.2003) (appellate court need not consider discrimination

claim based on learning disability where plaintiff failed to argue said claim to the district court).

Finally, the Court finds that Plaintiff has sufficiently pled actual damages under RESPA. *Lanton v. Ocwen Loan Servicing*, LLC, 793 Fed. Appx. 398 (6th Cir. 2019) (mortgagor's deposition testimony of "exceptionally high mortgage balance" and "interest that has accrued with the misapplied or non-applied payments" sufficiently stated actual damages for purposes of her RESPA claim).

Accordingly, Nationstar's motion to dismiss Count I pursuant to Rule 12(b)(6) is overruled.

C. Plaintiff's Claim Against Nationstar for Violation of the ECOA (Count IV)

Plaintiff has also alleged a claim against Nationstar under the ECOA, asserting that his Modification Agreement was denied because his ex-wife did not sign the document, a violation of Regulation B, 12 C.F.R. § 202.7(d) and 12 C.F.R. § 1002.7(d). Doc. #1, PAGEID#16. Nationstar, however, argues no violation occurred because (1) the Loan Modification is not a "credit instrument" or an "extension of credit," since Plaintiff was in default when he was offered the Loan Modification and (2) the ECOA does not apply when used by a creditor "to make a rational decision about an applicant's credit worthiness." *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 406 (6th Cir. 1998) (quoting 12 C.F.R.§ 202.2(c)(2)(ii)). Defendant also argues that no ECOA violation exists, since the state appellate court found that

Plaintiff was not required to obtain his wife's signature and could complete the Loan Modification if he provided a copy of his divorce decree.

Plaintiff responds that because the Loan Modification gave Plaintiff the right to defer payment of the Mortgage Loan, it is a "credit instrument" and "squarely falls within the definitions under Regulation B and as further articulated by the CFPB[Consumer Financial Protection Bureau]." Doc. #10, PAGEID#221. Plaintiff further argues that pursuant to the Sixth Circuit, all that is required to state a claim under Section 1002.7(d) is to allege that the creditor required the signature of another person where the applicant was otherwise individually creditworthy. *RL BB Acquisition, LLC v. Bridgemill Commons Development Group, LLC*, 754 F.3d 380, 389 (6th Cir. 2014).

In ruling on a motion to dismiss, the Court is required to accept the allegations of the Complaint as true. *Handy-Clay*, 695 F.3d at 538 (6th Cir. 2012) (quoting *Treesh*, 487 F.3d at 476). 745 F.3d 380, 389. In this case, the Complaint alleges that the Modification Agreement listed both Plaintiff and his ex-wife as borrowers and that when Plaintiff called Nationstar and asked why his ex-wife was listed on the Modification Agreement, Nationstar "instructed Mr. Abston to sign the Modification Agreement and send it to Nationstar" and "to send in a copy of [the] divorce decree." Doc. #1, PAGEID#8. The Complaint does not allege that Defendant required the signature of Plaintiff's ex-wife. Accordingly, Regulation B, which "prohibits a creditor from requiring the signature 'of a spouse [or other person] as a general matter, regardless of whether the creditor's motivation is

benign or invidious,'" has not been violated. *RL BB Acquisiton*, 754 F.3d. at 389 (citing 12 C.F.R. § 202.7(d)(1), (5), 12 C.F.R. § 1002.7(d)(1), (5)).

Accordingly, Nationstar's motion to dismiss Count IV pursuant to Rule 12(b)(6) is sustained.

## IV. Conclusion

For the reasons set forth above, the Court SUSTAINS the Motion to Dismiss of NewRez, LLC, f/k/a New Penn Financial, LLC, d/b/a Shellpoint Mortgage Servicing, Doc. #11, pursuant to Fed. R. Civ. P. 12(b)(6), and OVERRULES its Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(1). The Court SUSTAINS the Motion to Dismiss of the Federal Home Loan Mortgage Corporation, Doc. #12, pursuant to Fed. R. Civ. P. 12 (b)(1) and OVERRULES its Motion to Dismiss, Doc. #12, pursuant to Fed. R. Civ. P. 12 (b)(6) as moot. The Court SUSTAINS the Motion to Dismiss of Nationstar Mortgage LLC, pursuant to Fed. R. Civ. P. 12(b)(6), Doc. #9, as to Count IV and OVERRULES its Motion to Dismiss, Doc. #9, as to Count I.

Plaintiff's claim against Nationstar in Count I for a violation under RESPA remains for adjudication.

Date: May 18, 2020

WALTER H. RICE
UNITED STATES DISTRICT JUDGE